This Government contract case raises the questions whether plaintiff certified its claim as required by section 6(c)(1) of the Contract Disputes Act of 1978 (act), 41 U.S.C. §605(c)(l) (Supp. Ill 1979), and, if not, whether plaintiff can gain direct access to this court. Plaintiff argues (1) that certification is not a jurisdictional prerequisite to our rendering a decision; (2) that since the contracting officer processed the claim and rendered a final decision, defen *836 dant should be estopped from claiming that the proper certification is lacking; and (3) that, taken as a whole, statements in different communications from plaintiff and its associates to the contracting officer comply with the certification requirement. We resolve all issues in favor of defendant.
Because of the importance that plaintiff attaches to language in several documents plaintiff submitted to the contracting officer for support of its argument that, as a whole, the documents amount to a certification, we now reprint the language cited and plaintiffs briefs attendant commentary:
Plaintiff submits that considered together as a whole, the documents and letters submitted on its claim for award by plaintiff comply with the requirements of and constitute certification under 41 U.S.C. Section 605(c)(1). Plaintiffs formal memorandum in support of its claim submitted on June 15, 1979, states in its "Introduction”:
This memorandum is hereby submitted to the Defense Logistics Agency by the W.H. Moseley Company of Boise, Idaho, for the purpose of providing facts, analysis and argument in support of its claim for an award based on costs savings realized by the government resulting from implementation of the value engineering change proposal (vecp). . . .
On page 23 of said memorandum, plaintiff concludes its presentation regarding computation of costs savings and award with the following statements of good faith and belief as to the accuracy and completeness of the data and the contract adjustment for which plaintiff claims an award is due:
After a careful study of Dr. Mitchell’s evaluation, we believe that the evidence most strongly supports a determination of savings based upon the rejected Moseley bids-the sum of $2,321,400.00. Another reasonable approach might be to take the arithmetic mean of his four methods of evaluation, or the sum of $1,865,600.00, which is a compromise recognizing the difficulty of precise evaluation.
The economic evaluation in support of said memorandum prepared by Dr. John W. Mitchell, an economist, concludes with these words regarding his belief that the amount requested accurately reflects the amount for which the government is liable:
In this situation, the basic theory, the timing of events, actual rejection of low bids, the contrasts with other *837 years, and the opinions of those in the industry would support the proposition that a savings resulted from the implementation of the Moseley Company suggestion. An average of the approaches would support a savings of about $1.87 million.
Similar statements of belief regarding the accuracy and completeness of the material presented were made by plaintiff in its supplementary memorandum and economic analysis filed with the DLA by plaintiff under cover letter dated September 22,1979.
The first two of plaintiffs contentions were addressed and rejected in our recent opinion, Paul E. Lehman, Inc. v. United States, ante at 11, 673 F.2d 352 (1982). Therefore, those contentions must be añd are rejected here.
The facts relating to the merits of plaintiffs claim have no bearing on the disposition of the case; therefore, let it suffice to say that plaintiff suggested certain changes in the performance requirements of a contract it had with the Defense Logistics Agency. Plaintiff claims that these changes entitle it to a monetary award based on the savings defendant realized from implementing the suggestions. While there is some question as to when plaintiffs claim to the contracting officer was finalized, both parties agree it was well after the effective date of the act. Furthermore, there is no issue as to whether, if certification is not a barrier to plaintiffs claim, the claim meets the other prerequisites of the act.
In Lehman, we gave a detailed analysis of assertions identical to plaintiffs initial two contentions. We first considered the requirements of section 605(c)(1), which states that:
For claims of more than $50,000, the contractor shall certify that the claim is made in good faith, that the supporting data are accurate and complete to the best of his knowledge and belief, and that the amount requested accurately reflects thé contract adjustment for which the contractor believes the government is liable.
After reviewing the act’s legislative history and the mechanics of the statute, we concluded that "[t]he import of the language of the Act and its legislative history is that unless a claim has been properly certified it cannot be considered under the statute. * * * Unless that requirement is met, there is simply no claim that this court may *838 review under the Act.” Paul E. Lehman, Inc. v. United States, ante at 16, 673 F.2d at 355.
We have carefully considered the record and the submissions of both parties and, in light of our rulings in Lehman, hold (1) that the act does not grant us jurisdiction over plaintiffs uncertified claim and (2) that plaintiffs estoppel argument must also be rejected. Contracting officers are not empowered to "waive a requirement that Congress imposed.” Ante at 17, 673 F.2d at 356. Also, (3) we conclude that, for reasons which we shall state in a forthcoming opinion, neither plaintiffs piecemeal submissions to the contracting officer nor its untimely subsequent submission of a "certification” constitute certification pursuant to the requirements of section 6(c)(1) of the act.
it is therefore ordered, without hearing oral argument, since no genuine issues of material facts are present, that defendant’s motion for summary judgment is granted on the pleadings and briefs. The petition is dismissed.